WALLACE, Senior Circuit Judge,
dissenting:
The majority holds that a district court impermissibly delegates its authority to set a payment schedule under the Mandatory Victims Restitution Act (MVRA) if it orders immediate payment without considering the defendant’s financial condition. In so holding, the majority has volunteered to address an issue which is not before us. Ward waived that issue by failing to raise it in a direct appeal from his sentence. Furthermore, he did not argue either to the district court or to us that the sentencing court failed to consider his financial condition.
Despite Ward’s double waiver, and without an evidentiary record, the majority finds, as a matter of fact, that the judge who sentenced Ward in the Eastern District of California failed to consider the factors relevant to Ward’s ability to pay restitution. I disagree with the majority’s factual finding, which is improper on review of a denial of a petition for habeas corpus filed in the District of Arizona. Furthermore, even assuming that the sentencing court did fail to consider those factors, I disagree with the majority’s erroneous legal conclusion that such an error somehow delegated the sentencing court’s authority to the Bureau of Prisons (BOP).
For all of these reasons, I cannot join the majority opinion. There is nothing in the restitution order that delegates to the BOP the sentencing court’s authority to set a payment schedule. Therefore, I would affirm the Arizona district court. I dissent.
I.
Ward did not argue to the court from which this appeal comes to us (the District Court for the District of Arizona) or to us that the judge who sentenced him in the Eastern District of California entered the restitution order without first considering his financial condition. Even if he had, we would have required him to demonstrate *1053 why we should consider such a claim when it was not raised on direct appeal from the California district court. In Stone v. Powell, the Supreme Court explained:
The writ of habeas corpus and its federal counterpart, 28 U.S.C. § 2255, will not be allowed to do service for an appeal. For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. Even those non-constitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice.
428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (internal citations and punctuation omitted).
A claim that the California sentencing court failed to consider statutory factors would certainly have been available to Ward during his direct review process. If a mistake had been made, such misapplication of the statute could have been made due to error that did not constitute a constitutional violation. Therefore, if Ward had claimed in his petition for habeas corpus that the California sentencing judge failed to consider the statutory factors, the Arizona district court would likely have denied the claim as waived, and we likely would have affirmed that decision.
Ward, however, did not make that claim. The Arizona court did not have to reject it, and we do not have to affirm the rejection. Instead, we can treat that claim the same way Ward has treated it: as if it does not exist. The majority, however, digs that claim up sua sponte, despite its obvious waiver.
II.
Not only does the majority decide an issue that Ward waived by not raising it on direct appeal from the California court, it decides that issue after Ward again waived it on this appeal. We normally do not consider issues that were not presented to the trial court. See, e.g., Raich v. Gonzales, 500 F.3d 850, 868 (9th Cir.2007) (“It is a long-standing rule in the Ninth Circuit that, generally, ‘we will not consider arguments that are raised for the first time on appeal.’ ” (quoting Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999))). That rule is compounded by our ordinary practice of refusing to consider issues that are not raised in the opening brief. See, e.g., United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992) (‘We will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant’s opening brief.” (internal quotation marks omitted)). While those rules are subject to certain exceptions, I am not aware of any court that considers issues that were not even raised in the reply brief or (at the last opportunity) at oral argument.
In fact, the first question put to Ward’s counsel at oral argument (by Judge Rakoff) was: “On the factual question, was, and I’m not sure this relates to exhaustion, but was there any finding or any indication that he couldn’t pay this money immediately if he had actually been forced to do that?” Counsel responded: “Well Judge, what you’re asking about is an issue that relates to the trial court, the original trial court’s, findings. I did not have that record available to me and I do not know the answer to that question.” Counsel went on to speculate,
It appears to me from the sentencing order that the trial judge did not consider that question, because, of course, he’s required to take into account a number of those factors, including that one, and there’s no reference in the sentencing order or anything else in the record for this case that I’ve seen that would indicate that the trial judge did that. You know, based on some other things we *1054 know about Mr. Ward, I think it’s unlikely that he was going to pay a restitution award in the amount of—
Judge Rakoff interjected, “I think everyone would agree that it’s unlikely but I just wondered if there was anything in the record on that.” Counsel responded, “Not to my knowledge, your honor.”
Thus, Ward did not just fail to raise an argument that the California sentencing court did not consider the statutory factors; his attorney expressly declined to make that argument. While counsel was willing to speculate on how those factors might have weighed, he conceded that the record upon which Ward’s appeal from the Arizona court was based did not include that information.
Nevertheless, in spite of the lack of an evidentiary record, the majority finds, as a matter of fact, that “it is clear that the district court acknowledged it had set the order of ‘immediate payment’ without regard to the defendant’s financial circumstances.” Op. at 1050-51. The majority makes this finding by taking judicial notice of statements by the California sentencing judge in an order (vacated on reconsideration for lack of jurisdiction) granting a motion to set aside the judgment. Op. at 1050-51. Ward did not request judicial notice of the California sentencing court’s vacated order. But even if judicial notice were proper, I do not believe the judge’s statements in that order conclusive. The sentencing judge stated that courts in the Eastern District of California had eommonly imposed restitution due immediately with the expectation that BOP and/or Probation would work out the details of payment. United States v. Ward, No. CR 02-5231 AWI, 2008 WL 5220959, at *3 (E.D.Cal. Dec. 12, 2008). But the judge did not declare that, in Ward’s case, he received no presentence report with information relating to his financial condition or that he ignored such information. As Ward’s counsel conceded at oral argument, that information is not part of the record on the appeal before us.
We are a court of review. We often review findings of fact made by lower courts, but it is not our job to find the facts ourselves. The majority’s decision to plow ahead with this waived issue, in the face of a concededly insufficient record, is as unwise as it is unprecedented. Because the question of whether the sentencing court in California considered factors relevant to Ward’s financial condition is not before us, I would assume that the sentencing judge was provided with information regarding those factors and considered it. Cf. United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002) (district court did not err in ordering immediate payment of 4.5 million dollars in restitution when the court “had before it information regarding Defendant’s financial resources that it presumably considered and found insufficient to warrant periodic payments”). Employing that assumption, I would decide the question that Ward actually raised, and not attempt to circumvent our normal appellate process.[1]
*1055 III.
The question Ward actually raised and the one we must consider is whether the California sentencing court improperly delegated to the BOP its authority to impose a payment schedule. I do not dispute that an attempt to delegate a district court’s responsibilities under the MVRA is improper. The question is whether the California district court’s order actually did so. The answer to that question is simple. It did not.
The MVRA requires sentencing courts to order defendants convicted of certain crimes to pay restitution to victims. 18 U.S.C. § 3663A. It provides:
Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
(B) projected earnings and other income of the defendant; and
(C) any financial obligations of the defendant; including obligations to dependents.
18 U.S.C. § 3664(f)(2). Section 3572, in turn, provides:
(1) A person sentenced to pay ... restitution ... shall make such payment immediately,- unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.
(2) If [the restitution order] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made.
18 U.S.C. § 3572(d). Finally, 18 U.S.C. § 3664(f)(3) provides:
(A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.
(B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.
(emphasis added). Thus, the MVRA requires the district court to consider factors relevant to the defendant’s ability to pay and to state in its order how and when restitution should be paid. Section 3664(f)(2). But the decision of how (in cash or in kind) and when (immediately, on a date certain, or at specified intervals) the restitution should be paid is committed to the district court’s discretion. Section 3664(f)(3). The presumptive method for payment is in cash and the presumptive schedule for payment is immediate. Section 3664(f)(2) (incorporating § 3572(d)). The statute does not require the court to explain in the order its reasons for adopting a particular manner of, or schedule for, payment. In addition, since the default rule is to order immediate payment, the defendant bears the burden of demonstrat *1056 ing that the interests of justice would be served by establishing an installment schedule or by delaying payment in full until a date certain. Id.
On its face, the restitution order satisfies the MVRA. By ordering Ward to pay the restitution immediately, the sentencing court “specified] in the restitution order the manner in which, and the schedule according to which” Ward’s restitution was to be paid. See 18 U.S.C. § 3664(f)(2). In other words, the court ordered Ward to pay restitution in a particular manner (i.e., in cash), and according to a particular schedule (i.e., immediately). Because the statute does not require the court to specify in the order its reasons for ordering a particular manner of payment or a particular payment schedule, we cannot tell from the order whether the California sentencing court satisfied its responsibility to consider factors relating to Ward’s financial condition. Since Ward does not argue that he urged the sentencing court to impose an installment schedule in the interests of justice or that the sentencing court failed to consider the factors relating to his financial condition, we can properly assume that the sentencing court did consider those factors. The result, based on the record before us, is that the order complies with the statutory requirements. This, of course, assumes that the Arizona district court can even reach the California district court issue based on collateral habeas corpus jurisdiction.
Furthermore, and regardless of whether the court considered all the factors it was bound to consider, the restitution order does not delegate the judicial authority to impose a payment schedule to the BOP or to anyone else. Webster’s Dictionary defines the verb form of the word “delegate” as “to entrust to another: TRANSFER, ASSIGN, COMMIT < power delegated by the people to the legislature> cone may [delegate] one’s authority to a competent assistant;».” Webster’s Third New International Dictionary of the English Language Unabridged (1986). Similarly, Black’s Law Dictionary states, “[a]s a verb, [“delegate”] means to transfer authority from one person to another; to empower one to perform a task in behalf of another, e.g., a landlord may delegate his agent to collect rents.” Black’s Law Dictionary 426 (6th ed. 1990). Thus, a court delegates its authority if it gives another body authority to perform some task that is committed to the court. Under our precedents, a sentencing court impermissibly delegates its authority to impose a restitution payment schedule if it requires a defendant to submit to a payment schedule imposed by another body. See United States v. Gunning (Gunning I), 339 F.3d 948, 950 (9th Cir.2003) (construing order that defendant pay restitution “as directed by a U.S. probation officer” as assigning to the probation office full control of subsequent payment); United States v. Gunning (Gunning II), 401 F.3d 1145, 1150 (9th Cir.2005) (construing order that defendant pay restitution while imprisoned through the BOP’s Inmate Financial Responsibility Program as a delegation of scheduling authority).
Ward’s restitution order does not require him to pay any remaining balance “as directed by the BOP” or “pursuant to the IFRP.” It merely orders Ward to pay the full restitution amount immediately. The order simply does not provide for the possibility that Ward might not pay the full restitution amount as ordered. There is nothing in the order that purports to require Ward to submit to a payment schedule imposed by a body other than the court.
When Ward failed to pay the full restitution amount immediately as ordered by the court, he defaulted on his obligation. Thereafter, in exchange for certain privileges, he voluntarily agreed to make pay *1057 ments toward his defaulted obligation according to a schedule offered by the BOP, pursuant to the BOP’s Inmate Financial Responsibility Program (IFRP). The sentencing court may have assumed that, should Ward fail to pay the full amount, he would choose to participate in the IFRP. But it did not order him to do so. Nor did the California sentencing court purport to give the BOP authority to require Ward to participate. Nothing in the court’s order can be construed as a delegation of any authority to the BOP. Nor does the order forbid Ward from participating in the IFRP if he voluntarily decides to do so. That is his choice, not the district court’s or the BOP’s.
The majority concludes that the sentencing court delegated its authority by grossly expanding our Gunning cases. Those cases, however, are clearly distinguishable. The majority also cites similarly distinguishable out-of-circuit cases. Only one case directly supports the majority’s decision: an out-of-circuit case that failed to appreciate the real purpose of the MVRA’s scheduling provisions.
In Gunning I, we held that the district court cannot delegate its statutory obligation to specify the manner in which, and the schedule according to which, a restitution order is to be paid. 339 F.3d at 949. In that case, there was no question that the district court had delegated its authority. The district court had ordered “that Gunning ‘immediately’ make restitution in the amount of $3,924,835.37 and, simultaneously, that ‘[a]ny unpaid amount is to be paid during the period of supervision as directed by a U.S. probation officer.’ ” 339 F.3d at 950 (emphasis added). That order could only have been construed as assigning “to the probation office full control of subsequent payment.” Id.
We reaffirmed this principle in Gunning II. On remand from Gunning I, the district court had again ordered restitution payable immediately,
but with the unpaid amount to be paid as follows: (1) during the time of his imprisonment, it was to be paid through the BOP Inmate Financial Responsibility Program (IFRP), and (2) during the period of supervised release it was to be paid in monthly installments of not less than ten percent of Gunning’s gross income, commencing thirty days after his release from imprisonment.
Gunning II, 401 F.3d at 1147. We held that the new order again delegated the district court’s authority because it improperly directed the BOP to determine the payment schedule for the time of Gunning’s imprisonment. Id. at 1150. Thus, in both Gunning I and Gunning II, we held that the district court delegated its scheduling authority when it affirmatively directed another entity to set the schedule for the payment of restitution.
The facts of this case are clearly distinguishable from the Gunning cases. Here, the California district court did not order Ward to participate in the IFRP. It did not direct the BOP to establish a payment schedule. The order did not assign “full control of subsequent payment” to anyone. The Gunning cases simply are not authority for the issue before us.
We further developed the non-delegation principle in United States v. Lemoine, 546 F.3d 1042 (9th Cir.2008). In that case, the district court had ordered Lemoine to pay restitution “during his imprisonment ‘at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons’ Inmate Financial Responsibility Program.’ ” Id. at 1044. As a condition of his participation in the IFRP, however, the BOP required Lemoine to pay restitution at a rate of $132 per month. Id. In denying Lemoine’s motion to modify the judgment, the district court said that it had *1058 assumed that Lemoine would choose to participate in the IFRP when it entered the restitution order. Id. Notwithstanding the higher rate imposed by the BOP, and notwithstanding the district court’s assumption that Lemoine would participate in the IFRP, we held that the restitution order did not delegate the district court’s scheduling authority because “nothing in the text of the statute or our prior decisions places any limits on the BOP’s operation of an independent program, such as the IFRP, that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective judgments.” Id. at 1048. If Lemoine had chosen not to participate in the IFRP, he could have made payments according to the court-ordered schedule. Thus, Lemoine did not hold that an order of immediate payment implicitly delegates scheduling authority to the BOP. Rather, it held that a district court’s assumption that a defendant would choose to participate in the IFRP does not mean that its restitution order impermissibly delegated scheduling authority. Id. at 1044.
Clearly, Lemoine does not support reversal in Ward’s case. On the contrary, its analysis is consistent with affirming the district court. Lemoine makes clear that the BOP can operate the IFRP regardless of the schedule imposed by the court. Even if the California sentencing court had ordered Ward to pay according to an installment schedule, the BOP could still have demanded different terms for the voluntary privilege of participation in the IFRP. We should look no further in deciding this appeal than this circuit. Lemoine controls through its analysis of the facts presented, not through its footnoted dictum relied on by the majority.
But in the absence of binding precedent to support its reasoning, the majority bases its decision almost entirely on cases from our sister circuits. Most of these cases simply apply the same rule that we adopted in the Gunning cases to similar facts. Others conclude (on direct review, not collateral review) that sentencing courts abused their discretion at sentencing, without any application of the non-delegation doctrine.
For instance, the facts of United States v. Corley, 500 F.3d 210 (3d Cir.2007), vacated on different grounds, 556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009), are indistinguishable from the facts of Gunning II. In Corley, the sentencing court ordered:
The defendant shall make restitution and fíne payments from any wages he may earn in prison in accordance with the Bureau of Prisons Inmate Financial Responsibility Program. The restitution and fine shall be due immediately. Any balance remaining upon release from custody shall be paid at a rate of no less than $100.00 per month.
500 F.3d at 224 (emphasis added). As in Gunning II, the Third Circuit ordered the defendant to submit to the scheduling authority of the BOP during the period of incarceration by requiring him to participate in the IFRP. Here, on the other hand, the court did not order Ward to submit to the authority of the BOP. He may voluntarily choose to participate in the IFRP or he may choose not to.
The Second Circuit’s decision in United States v. Kinlock, 174 F.3d 297 (2d Cir.1999), vacated a restitution order on the ground that the sentencing court abused its discretion in ordering immediate payment. In that case, the sentencing court considered the statutory factors, but ordered immediate payment in the face of clear evidence that the defendant was incapable of making payment immediately. Id. at 301. Contrary to the majority’s characterization of Kinlock, the Second Circuit did not hold that the restitution *1059 order contained an impermissible delegation of authority. It merely held that the sentencing court’s abuse of discretion required the restitution order to be vacated and remanded.
Kinlock would be persuasive if the case before us were a direct appeal and Ward’s argument was that the district court ordered immediate payment when the interests of justice required a different schedule. But that is not the question before us. By citing Kinlock, the majority conflates the idea that failure to consider statutory factors constitutes reversible error with the idea that delegation of authority renders an order invalid ab initio. The majority also fails to differentiate between a direct appeal from a sentence, where review for error of the former kind would be proper, and a collateral attack, where it is not. Kinlock is inapposite.
As the majority acknowledges, the First, Sixth, and Tenth Circuits have not addressed the precise issue with which we are now faced. In United States v. Metric, the First Circuit recognized, as I recognize, “that the district judge could not empower the probation officer to make a final decision as to the installment schedule for payments.” 166 F.3d 406, 409 (1st Cir.1999). But, whereas Ward’s restitution order has no language regarding submission to a payment schedule set by the BOP or participation in the IFRP, the order in Metric directed that, “[a]ny amount that the defendant is unable to pay now shall be paid in monthly installments, to be determined in amount by the supervising officer, during the period of his supervised release.” Id. at 408 (emphasis added). Similarly, neither United States v. Davis, 306 F.3d 398 (6th Cir.2002), nor United States v. Overholt, 307 F.3d 1231 (10th Cir.2002), held that a failure to consider the statutory factors automatically constitutes a delegation of scheduling authority.
The primary case that gives comfort to the majority’s conclusion is the Eleventh Circuit’s decision in United States v. Prouty, 303 F.3d 1249 (11th Cir.2002). In Prouty, the defendant objected to an order that he pay restitution immediately on the ground that he did not have the means to pay. Id. at 1251. Prouty asked the court to set a reasonable payment schedule, but the court denied the request, “stating: T will leave that to the discretion of the Probation Office or whoever does that.’ ” Id. The district court’s order did not require Prouty to submit to a schedule imposed by the Probation Office, but a Probation Officer told the court that “they do work out payment plans with the defendants.” Id. at 1254. On appeal, Prouty argued “that the district court erred in failing to consider his financial condition.” Id. at 1253. In the alternative, Prouty argued “that the district court improperly delegated the setting of the payment schedule to the Probation Office.” Id. The Eleventh Circuit adopted Prouty’s alternative argument: “[I]f the statute does not permit delegation to the probation office, we cannot endorse a restitution order requiring ‘immediate’ payment with an informal understanding that the probation office shall set a repayment schedule.” Id. at 1255. It reasoned that “the availability of such an option would in practice defeat the statutory requirement that the court establish any installment schedule.” Id. The Eighth Circuit reached a similar result in United States v. McGlothlin, 249 F.3d 783 (8th Cir.2001), but only after it also determined that the sentencing court abused its discretion when it ordered immediate payment without any consideration of the section 3664(f)(2) factors, an argument Ward declined to make.
Prouty and McGlothlin can, at best, only be persuasive authority and not controlling as they are not from our court. However, they are not persuasive. The *1060 problem with Prouty and McGlothlin is that they assume the probation office or BOP has inherent authority to set a repayment schedule unilaterally when a defendant fails to meet the payment schedule imposed by the court. That assumption is not correct. Once the court specifies the method and schedule for payment, if and when payments are actually made is simply a collections matter. It would not be a great surprise to learn that even a defendant who has the ability to pay his obligations may, on occasion, fail to do so. In any collections scenario, the party seeking to collect a debt from a person who has failed to pay has the option to attempt to work out an arrangement for voluntary payment or to seek assistance from a court. But the collection agent does not have inherent authority to impose unilaterally and enforce a mandatory payment schedule. Indeed, the probation officer’s statement in Prouty that the probation office would “work out [a] payment plan[ ]” indicates that he recognized such a plan would require Prouty’s voluntary agreement. See id. at 1254.
The responsibility for collecting restitution obligations is committed to the Attorney General. 18 U.S.C. § 3612(c). But the statutes do not give the Attorney General judicial authority. Rather, if a defendant refuses to pay voluntarily — either because he lacks the ability to pay or because of mere contempt of the court — the statutes direct the Attorney General to seek assistance from the court.
A restitution payment goes into default if it is delinquent for more than 90 days. 18 U.S.C. § 3572(i). “Notwithstanding any installment schedule, when a ... payment of restitution is in default, the entire amount of the ... restitution is due within 30 days after notification of the default, subject to the provisions of section 3613A.” Id. If the Attorney General or his designee moves the court for sanctions against a defendant in default pursuant to sections 3572® and 3613A, the court may take any number of measures, including entering or adjusting a payment schedule. 18 U.S.C. § 3613A(a)(l). But I am aware of no statute that requires the Attorney General to file such a motion. Rather, as a collections agent, the Attorney General has the discretion to decide whether to attempt to work out a voluntary arrangement for collecting the obligation or to seek help from the court.
Interestingly, even if the court had imposed an installment plan rather than ordering immediate payment, Ward’s obligation would have become due immediately if he had defaulted on his payments. Thus, even if the district court had done what the majority says it should have, Ward could well have ended up in the precise situation he is in now. Under section 3572®, a defendant may be obligated to pay the full amount of a restitution order immediately, regardless of whether he is able to pay.
In some circumstances, a defaulting defendant might himself request a hearing under sections 3572® and 3613A. For example, if Ward does not want to remain in default but lacks the ability to pay, he might seek the court’s protection by requesting entry or adjustment of a payment schedule under section 3613A. Ward did attempt to obtain relief from the district judge that sentenced him by filing a motion under 28 U.S.C. § 2255. See United States v. Ward, No. CR 02-5231 AWI, 2008 WL 5220959, at *1 (E.D.Cal. Dec. 12, 2008), vacated on reconsideration, 2009 WL 160690 (E.D.Cal. Jan. 22, 2009). The sentencing court ultimately decided that it lacked jurisdiction to consider a motion under 28 U.S.C. § 2255. Ward, 2009 WL 160690, at *1-2. But that court would clearly have had jurisdiction to consider a *1061 motion to modify the restitution order under 18 U.S.C. §§ 3572(i) and 3613A.
A defendant like Ward might find the option to make such a motion attractive because it could help him avoid statutory penalties for his delinquency in payment. See 18 U.S.C. § 3612(g). But, again, because the onus of collection is on the Attorney General, nothing requires Ward to go before the court. He may choose to work out an informal voluntary arrangement with the BOP, or he may choose to live with the restitution order and remain in default.
Because Ward failed to pay the entire restitution award immediately, he went into default. Either Ward or the BOP could have filed a motion in the district court pursuant to sections 3572® and 3613A, but neither party chose to do so. Instead, the BOP offered to allow Ward to participate in the IFRP and Ward voluntarily accepted the offer. It was his choice, not the order of the sentencing court. Ward does not have to participate in this program. He may opt out of it at any time. If he withdraws from the IFRP, the BOP cannot impose a payment schedule on him. As a defendant in default, Ward would be free to make payments on whatever schedule he chooses (or to make no payments at all) unless the government obtains sanctions from the California district court by filing a motion under sections 3572(i) and 3613A. Conversely, if Ward actually wanted to get out of default, he could file a motion pursuant to sections 3572® and 3613A requesting that the California district court enter a payment schedule. But even if the district court adopted a payment schedule, that would not prevent the BOP from setting its own conditions for Ward’s voluntary participation in the IFRP. See Lemoine, 546 F.3d at 1050 (“[T]he BOP has the authority to encourage voluntary payments in excess of those required under the court’s judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate’s participation in the IFRP”).
The majority argues that, because the BOP has the authority to move for sanctions, it has the power “to dictate the terms of the payment of the defendant’s restitution order.” Op. at 1051. Of course, this is not so. As I have explained, defendants are not bound by the will of the BOP. To be sure, the BOP has significant leverage in bargaining the terms of a defendant’s participation in the IFRP. But the BOP cannot force a defendant to adopt the BOP’s payment schedule. Furthermore, defendants in default such as Ward have access to the courts. If Ward were to file a motion under sections 3572® and 3613A, the government could recommend a schedule. But even if the court were to reject the government’s recommendation, the BOP would remain free to set conditions for voluntary participation in the IFRP independently of the court’s order. But none of this confers upon the BOP the judicial authority to set Ward’s payment schedule. On the facts of this case, the California sentencing court retained that authority.
IV.
Where does this leave the appeal? The majority has chosen to address an issue which is clearly not before us. Having caught the scent of a possible abuse of discretion at sentencing, the majority adopts an argument that Ward failed to make on a direct appeal from the California district court, which he would likely have been precluded from making in his collateral attack in the Arizona district court, and which, in any event, he expressly declined to make either in his petition for habeas corpus or in his appeal from the Arizona district court’s denial of the peti *1062 tion. That practice is surprising and well beyond the usual rules of issues taken in this court.
Even after ignoring Ward’s repeated waivers, and even assuming the California district court issue can be reached in an Arizona district court habeas corpus petition, the majority is wrong on the law. Even assuming that the California sentencing court committed reversible non-constitutional error — either by failing to consider factors relating to Ward’s financial condition or by ordering immediate payment in the face of clear evidence that Ward lacked the ability to pay — there is nothing in the order that delegates any of the court’s authority to the BOP. I would hold that, as long as a district court does not order a defendant to submit to a schedule established by another body, an order that the defendant pay the restitution immediately does not run afoul of the non-delegation principle established in our Gunning cases.
Unless and until the government obtains a court order modifying the schedule for his payments, Ward is free to make payments on whatever schedule he prefers as an obligor in default. However, if he chooses to stop making payments under his voluntary agreement with the BOP, then the BOP may withhold the privilege of participation in the IFRP. I would affirm the district court’s denial of Ward’s habeas corpus petition.

. The majority accuses me of considering only some of the MVRA's, requirements but not others. Op. at 1051 n. 5. But that is not my position. I am not ignoring the requirements of the MVRA. I am simply assuming that those requirements which Ward never challenged were satisfied. As Ward concedes, the record on this habeas corpus petition is silent as to whether the sentencing court failed to satisfy those requirements. The majority also attributes to me the position that Ward waived his right to argue in a section 2241 petition "that the BOP lacks the ability to collect restitution payments because the restitution order is unlawful.” Op. at 1052 n. 6. But again, that is not my argument. My position is that Ward waived his right to argue that the sentencing court failed to consider his financial condition. The majority’s assertion that it is the government that waived any objection to arguments that are nowhere *1055 to be found in the record is ironic, to say the least.