# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2014

Lyle W. Cayce
Clerk

No. 12-10775

PAUL WILLIAM DRIGGERS,

                                        Petitioner - Appellant

v.

MAUREEN CRUZ, Warden; UNITED STATES BUREAU OF PRISONS,

                                        Respondents - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JOLLY and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Paul William Driggers appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2241. In his petition, Driggers challenged the constitutionality of the Inmate Financial Responsibility Program ("IFRP"), a program administered by the Bureau of Prisons ("BOP") that grants inmates certain privileges if they participate in the program by paying off court-ordered financial obligations.

First, Driggers argues that the IFRP impedes his First Amendment right to access the courts. Next, he argues that the mechanics of the IFRP unconstitutionally discriminate against lower-income inmates. Finally, Driggers is unhappy because he has been excluded from the program and its benefits for failing to fulfill his obligations under it. He argues that his

No. 12-10775

exclusion unconstitutionally deprives him of liberty interests. We AFFIRM the denial of his petition for writ of habeas corpus.

I.

We begin with a brief background and explanation of the IFRP. In 1987, the BOP implemented the IFRP as a method of "encourag[ing] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. An inmate makes payments under the IFRP according to a plan developed by BOP staff; the staff then monitors that inmate's progress in meeting his obligations under the plan. *Id.* at § 545.11. The inmate may make payments using any combination of funds earned while in detention (known as "institution resources") or from funds given to the inmate from family or friends (known as "non-institution resources"). *Id.* at § 545.11(b). The IFRP mandates that an inmate pay no less than $25 per quarter; once an inmate makes this minimum payment, he is allowed a $75 per month deduction to enable him to make use of the Inmate Telephone System. *Id.* An IFRP minimum payment "may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources." *Id.* at § 545.11(b)(1). BOP officials periodically help each inmate make new IFRP plans by taking into account credits for past payments and IFRP mandated deductions.

If an inmate verbally refuses to participate in the program or if it is discovered the inmate is not making the agreed upon payments, it is within the BOP's discretion to place that inmate into IFRP "refuse" status, which results in tangible consequences for the inmate. *Id.* at §§ 545.11(d)(1)-(11). Such consequences include: (1) notifying the Parole Commission "of the inmate's failure to participate;" (2) the inmate's future inability to receive furlough; (3) the inability "to receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;" (4) no future assignments to "any

2

No. 12-10775

work detail outside the secure perimeter of the facility;" (5) removal from UNICOR or the inability to be placed into UNICOR;[1] (6) a "more stringent" monthly commissary spending limit; (7) placement into a lower housing status; (8) no future placement in a "community-based program;" (9) no release gratuity without the Warden's approval; (10) and finally, no incentives for entering residential drug treatment programs. *Id.*

## II.

In May 2007, Driggers began his sentence of 120 months for using interstate facilities during the commission of a murder-for-hire scheme in violation of 18 U.S.C. § 1958. The court also imposed a $17,500 fine, ordering that Driggers make "payments of not less than $25 per quarter while incarcerated through the Inmate Financial Responsibility Program." By December 2010, Driggers had failed to make these regular $25 quarterly payments and the BOP placed him in IFRP "refuse" status. Driggers claims that he is unable to make the minimum payments because all of his available funds go toward the specific purposes of personal maintenance, communications with both his family and attorneys, and the costs of litigation. He says that his inmate account carries, on average, a balance of less than three dollars, leaving him unable to make his minimum IFRP quarterly payments.

When placed into IFRP "refuse" status, Driggers filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241. Driggers sought an order from the district court requiring the BOP to vacate its directive placing him in "refuse" status. He alleged the BOP administers the IFRP unconstitutionally,

---

[1] Also known as Federal Prison Industries. UNICOR is a government corporation that utilizes penal labor to produce goods and services.

No. 12-10775

which deprives him of his First Amendment, equal protection, and due process rights.

A magistrate judge issued a recommendation to deny and, in June 2012, the district court adopted the recommendation. Driggers timely filed a notice of appeal.

In an appeal from the denial of habeas relief, we review issues of law *de novo*. *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001). Although we have upheld the constitutionality of the IFRP in one unpublished decision, we now take the opportunity specifically to address these particular types of constitutional attacks in a published opinion. *See Acevedo v. Franco*, No. 95-50260, 1995 WL 625358, at *1 (5th Cir. Oct. 3, 1995).

### III.

Driggers first argues that his placement into IFRP "refuse" status sanctions him "for exercising his First Amendment rights of petitioning the government (the courts) for a redress of grievances." Driggers argues that he cannot both make the minimum $25 payment under the IFRP and also pursue his various claims and appeals in the judicial system. His placement into IFRP "refuse" status unconstitutionally punishes him for pursuing those rights.[2] He seeks an IFRP exclusion or exemption for inmates' payments made toward legal postage, copying, typewriter ribbons, court fees, and other legal costs.

---

[2] Even if Driggers's petition liberally is construed to plead a claim of retaliation for exercising his First Amendment right to access the courts, such a claim fails. By placing Driggers in IFRP "refuse" status, BOP officials do not evidence an "intent to retaliate" against him for exercising his right of access to the courts. *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (holding that a retaliation claim requires a plaintiff to show "the defendant's intent to retaliate against the prisoner for his or her exercise of that right"). Instead, prison officials are only enforcing a generally applicable prison regulation; there is no evidence of any sort of retaliatory motive.

4

No. 12-10775

Driggers correctly frames his claim of denial of access to the courts as a First Amendment claim because "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). The Constitution requires that inmates have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). This right, however, does not suggest that an inmate must be able to "discover grievances . . . [or] litigate effectively once in court." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). In *Lewis*, the Supreme Court explained the parameters of this right of access by stating that the "tools [the] Constitution requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and . . . [those necessary] to challenge the conditions of their confinement." *Id.* at 355. An inmate's claim arguing that he has been unconstitutionally deprived of access to the courts requires a showing of actual injury. *Id.* at 351-52. The inmate must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded." *Id.* at 353.

Here, Driggers fails to demonstrate an actual injury. His petition is devoid of facts that show that he has been deprived of his right to access the courts. He alleges that he has had to reallocate money (that would ordinarily be used to make IFRP payments) toward his legal expenses. He has not, however, said that this reallocation has harmed his ability to access the courts much less when, where, or how. A prisoner cannot prevail on an access-to-the-courts claim without proving an actual injury; Driggers fails to do so and, thus, his claim fails. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).

## IV.

Driggers next argues that the IFRP's uniform $25 minimum payment unconstitutionally discriminates against him and such poorer inmates in

5

violation of the equal protection component of the Fifth Amendment. According to Driggers, the IFRP impermissibly classifies inmates based on their wealth, or ability to pay, denying them equal protection. Neither we, nor any other court, has had the opportunity to address whether a minimum payment under the IFRP unconstitutionally deprives indigents of the equal protection of the laws.

At the outset, Driggers fails to show that he, as an indigent prisoner, is a member of a suspect class for equal protection purposes. Under an equal protection analysis, a law that does not "target[] a suspect class" will be upheld, "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Generally speaking, an individual's indigence does not make that individual a member of a suspect class for equal protection purposes. *Maher v. Roe*, 432 U.S. 464, 471 (1977) (stating that the Supreme Court "has never held that financial need alone identifies a suspect class for purposes of equal protection analysis"). Furthermore, the Supreme Court has held that when a regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

We have previously held, in an unpublished opinion, that the IFRP meets this low level of scrutiny. *See Acevedo*, 1995 WL 625358, at *1 (holding that the IFRP "does not violate any constitutional right as such participation is reasonably related to a legitimate penological interest in encouraging inmates to rehabilitate themselves by developing a sense of financial responsibility"). Other circuits have held the same. *See United States v. Lemoine*, 546 F.3d 1042, 1045 (9th Cir. 2008) (holding that the IFRP "promotes [inmates'] acceptance of responsibility and fulfillment of the obligation to make restitution to victims"); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990) (finding that participation in the IFRP is "reasonably related to the

No. 12-10775

legitimate government objective of rehabilitation"); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) (holding that the IFRP helps inmates develop a sense of financial responsibility and thus serves a legitimate penological interest). Because the IFRP is reasonably related to legitimate penological interests, it does not violate Driggers's equal protection rights.

V.

Finally, Driggers argues that his placement into IFRP "refuse" status, and the consequences associated with it, deprive him of fundamental liberty rights in violation of the Fifth Amendment. Although we have not had the opportunity to decide whether the consequences of being placed in IFRP "refuse" status constitute a deprivation, other circuits have uniformly held that such placement does not violate an inmate's due process rights.

An inmate has no entitlement to "any of the benefits agreeing to participate in the IFRP would provide." *Lemoine*, 546 F.3d at 1049. The conditions in § 545.11(d) amount to the loss of privileges, not the imposition of hardships upon non-participating inmates. It is within the BOP's discretion to give these privileges to IFRP participants as a method of encouraging participation in the program. "[T]he discretion vested in prison officials to set the terms and conditions of prison employment [with respect to the IFRP] 'precludes the implication of a liberty interest deserving of due process protection.'" *Dorman v. Thornburgh*, 955 F.2d 57, 58 (D.C. Cir. 1992). *See also Lemoine*, 546 F.3d at 1046 (stating that an inmate does "not have a preexisting right to receive any of the benefits conditioned on his participation during his incarceration").

Even if the "refuse" conditions imposed in 28 C.F.R. § 545.11(d) for failing to participate in the IFRP could be properly viewed as punishments, the conditions are not themselves violative of the Due Process Clause. The current test used by the Supreme Court to determine whether prison regulations or

7

conditions violate a prisoner's due process rights is found in *Sandin v. Conner*. 515 U.S. 472, 484-85 (1995). In *Sandin*, the Court held that a prisoner's liberty interests are not violated unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The use of this test was reaffirmed in *Wilkinson v. Austin*, where the Court explained that a liberty interest under the Due Process Clause "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." 545 U.S. 209, 221 (2005). The IFRP conditions are not so severe as to impose an "atypical and significant hardship" upon the inmate in relation to "the ordinary incidents of prison life." *See Lemoine*, 546 F.3d at 1046; *Dorman*, 955 F.2d at 58; *Davis v. Wiley*, 260 F. App'x 66, 69 (10th Cir. 2008); *Duronio v. Gonzalez*, 293 F. App'x 155, 157 (3d Cir. 2008); *United States v. Warmus*, 151 F. App'x 783, 787 (11th Cir. 2005). As such, we find that the imposition of the conditions in § 545.11(d) does not violate an inmate's liberty interests under the Due Process Clause and, thus, Driggers's claim fails.

## VI.

In conclusion, we see no reason to stray from other circuits upholding the constitutionality of the IFRP. Therefore, the district court's denial of Driggers's petition for writ of habeas corpus is

AFFIRMED.

8