**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK RICHARD WARD,
          *Petitioner-Appellant,*

          v.

RICARDO E. CHAVEZ, Warden,
          *Respondent-Appellee.*

No. 09-17016

D.C. No.
2:09-cv-00246-GMS

OPINION

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted
January 10, 2012—San Francisco, California

Filed May 8, 2012

Before: J. Clifford Wallace and Milan D. Smith, Jr.,
Circuit Judges, and Jed S. Rakoff, Senior District Judge.*

Opinion by Judge Jed S. Rakoff;
Dissent by Judge Wallace

---

*The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for Southern New York, sitting by designation.

## COUNSEL

Douglas C. Erickson (argued), Maynard Cronin Erickson Curran & Reiter, P.L.C., Phoenix, Arizona, for the petitioner-appellant.

Karla Hotis Delord (argued), Dennis K. Burke, and Randall M. Howe, United States Attorney's Office for the District of Arizona, Phoenix, Arizona, for the respondent-appellee.

## OPINION

RAKOFF, Senior District Judge:

The issue in this case is whether, under the Mandatory Victims Restitution Act of 1996 ("MVRA"), a district court impermissibly delegates its obligation to set a restitution payment schedule when it orders "immediate" payment with the expectation that the Bureau of Prisons ("BOP") will work out a payment schedule with the prisoner pursuant to the Inmate Financial Responsibility Program ("IFRP"). We hold that where the sentencing court has failed to consider whether the defendant has the financial resources to pay restitution immediately, ordering immediate payment impermissibly delegates to the BOP the court's obligation to set a payment schedule.

## BACKGROUND

On December 9, 2002, petitioner Jack Richard Ward was sentenced in the Eastern District of California to 300 months'

imprisonment and 3 years' supervised release after being convicted of one count of attempted Armed Bank Robbery and nine counts of Armed Bank Robbery. In addition to his prison term, the sentencing court ordered Ward to pay a $1,000 Crime Victim Fund Assessment and $27,885 in restitution to the crime victims. The "Schedule of Payments" portion of the court's judgment stated that the Crime Victim Fund Assessment and restitution were due and payable "immediately." Ward was then sent for incarceration to the Federal Correctional Institution in Phoenix, Arizona, where he was voluntarily employed by Unicor (the prison employment system). *See United States v. Ward*, No. CR 02-5231 AWI, 2008 WL 5220959, at *1 (E.D. Cal. Dec. 12, 2008). In accordance with standard practice, portions of Ward's Unicor pay was deducted and applied to his restitution obligation.

Ward subsequently filed motions in the California district court that sentenced him, requesting deferral and/or reduction in his restitution payments. The California district court construed this as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, and amendments to that motion. *Id.* at *1-2. The court then concluded that its order for "immediate" repayment of restitution impermissibly delegated to the BOP the court's obligation to set a repayment schedule, and ordered the BOP to cease collecting money from Ward for payment of restitution until the court issued a new restitution order. *Id.* at *2-4. After the Government moved for reconsideration, however, the district court concluded that because neither 28 U.S.C. § 2255 nor 18 U.S.C. § 3664(k) allows a district court to rule on the legality of a restitution order, and because Ward was incarcerated in Arizona, it lacked jurisdiction to issue its prior Order, and accordingly vacated the Order. *See United States v. Ward*, No. CR 02-5231 AWI, 2009 WL 160690, at *1-2 (E.D. Cal. Jan. 22, 2009) (noting § 3664(k) allows district court to change a restitution schedule based only on changed financial circumstances and citing *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002)).

After the termination of his California district court proceeding, Ward initiated this habeas proceeding pursuant to 28 U.S.C. § 2241 in the District of Arizona, claiming:

> The BOP lacks a lawful order of restitution from the district court in accordance with the Mandatory Victims Restitution Act of April 1996, to collect restitution from the Petitioner during his incarceration. The BOP, without a lawful order of restitution, cannot force the Petitioner to participate in the Inmate Financial Responsibility Program and must place Petitioner on "no obligation" status.

The Government argued that Ward's habeas petition should be denied because Ward had not exhausted his administrative remedies and because his claim was meritless. Ward argued that the district court should exercise its discretion to hear his petition because any attempt to exhaust his administrative remedies would be futile.

In a Report and Recommendation, the magistrate judge recommended the district court deny the petition, concluding that Ward had not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See Ward v. Chavez*, No. 2:09-cv-00246-GMS, Dkt. No. 11 (D. Ariz. May 26, 2009). The district court, after considering Ward's objections to the R&R and the Government's responses, adopted the R&R in part. *Ward v. Chavez*, No. CV-09-00246-PHX-GMS, 2009 WL 2753024 (D. Ariz. Aug. 27, 2009). The district court agreed with Ward that the PLRA's exhaustion requirement does not apply to § 2241 habeas petitions, but declined to waive the judicially-created exhaustion requirement on the grounds of futility. *Id.* at *2-4 ("Petitioner has failed to show sufficient evidence that his exhaustion of the BOP appeals process would have been futile.").

Notwithstanding its refusal to waive the exhaustion requirement, the district court then addressed the merits of Ward's

claim and found it meritless for two reasons. First, the court concluded that Ward was not being forced to participate in the IFRP, as it is a voluntary program that Ward chose to participate in and could exit at anytime. *Id.* at *5. Second, the court concluded that since the sentencing court had not required the BOP to set a schedule of payments, it had not delegated its authority to set a restitution schedule to the BOP. *Id.* at *6. Because the sentencing court neither directed the BOP to set a schedule nor required Ward to participate in the IFRP, the court concluded that the cases Ward relied on did not apply to his claim. *Id.* Ward appeals to this Court from this decision.

## DISCUSSION

**[1]** Before considering the merits of Ward's petition, we first address the issue of exhaustion. As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). This exhaustion requirement is subject to waiver in § 2241 cases because it is not a "jurisdictional prerequisite." *Id.* Typically, exhaustion can be waived "if pursuing those [administrative] remedies would be futile." *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

Here, Ward exhausted only step one of the three-step BOP administrative remedy system: he filed a formal administrative grievance with the Warden, which the Warden denied. 28 C.F.R. § 542.10 *et seq.*[1] Ward argues, however, that any administrative appeal would have been futile, as the denial was based on an official policy of the BOP: the IFRP. *See*

---

[1]Although Ward does not dispute that he withdrew his appeal of the Warden's denial of his grievance, he asserts that he did so because the sentencing court originally granted him the relief he had sought, prior to reconsidering its order.

*Sours v. Chavez*, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *2-3 (D. Ariz. June 17, 2009) (report and recommendation) (concluding exhaustion not required where request for relief denied based on official BOP policy), *as cited in Sours v. Chavez*, No. CV08-1903-PHX-SRB, 2009 U.S. Dist. LEXIS 76965, at *2-3 (D. Ariz. Aug. 26, 2009). *Sours*, like this case, involved a petitioner seeking to set aside a restitution order that improperly delegated scheduling authority to the BOP. *Sours*, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *1-2. In waiving exhaustion, the *Sours* court relied on our opinion in *Fraley*, which held there was futility where the petitioner's claim was denied based on official BOP policy. *Fraley*, 1 F.3d at 925. The petitioner in *Sours*, unlike Ward, had gone through three out of four levels of BOP review, *Sours*, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *3-4. But it was the reliance on the "official policy" that led to a finding of futility in *Sours* (and *Fraley*), and the *Sours* court expressly noted that the level of Sours's exhaustion simply showed his petition was even *more* futile than *Fraley*, where the prisoner had gone through only one level of review. *Sours*, No. 2:08-cv-01903-SRB, Dkt. No. 22, at *3-4.

**[2]** Because of the existence of official BOP policy — the IFRP — exhaustion would be futile here, as it was in *Sours* and *Fraley*. The district court incorrectly dismissed the probative value of the BOP's return to collecting restitution from Ward after the sentencing court vacated, for lack of jurisdiction, its order that granted Ward relief. *Ward*, 2009 WL 2753024, at *3-4. The fact that the BOP resolved to continue collecting restitution from Ward after the sentencing court determined its own restitution order was unlawful, before then vacating for lack of jurisdiction after the Government moved for reconsideration, shows a return by the BOP to the official policy of the IFRP. It also shows that any further appeal by Ward would unquestionably have been denied. Accordingly, the district court erred in not waiving the exhaustion requirement, as Ward's exhaustion of his administrative remedies would have been futile.

**[3]** Turning to the merits of Ward's petition, the MVRA directs that a sentencing court "shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). We have previously held that the district court's statutory responsibility to set the restitution payment schedule is "nondelegable." *United States v. Gunning* (*Gunning I*), 339 F.3d 948, 949 (9th Cir. 2003); *United States v. Gunning* (*Gunning II*), 401 F.3d 1145, 1149 (9th Cir. 2005). "[T]he district court simply does not have the authority to delegate its own scheduling duties — not to the probation office, not to the BOP, not to anyone else." *Gunning II*, 401 F.3d at 1150.

Here, Ward argues the sentencing court impermissibly delegated its authority to the BOP in effect by ordering payment of restitution "immediately" without specifying any payment schedule, leaving him no option but to participate in a BOP prison work program in order to attempt to comply with the sentence in good faith (given his lengthy sentence), thus subjecting him to the IFRP. In *Gunning I*, the district court ordered restitution payable "immediately," with any amount unpaid after the defendant's release "to be paid during the period of supervision as directed by a U.S. probation officer." 339 F.3d at 950. We held this order assigned to the probation office "full control of subsequent payment," and thus impermissibly delegated the district court's authority to probation. *Id.* On remand, the district court ordered restitution payable "immediately," and additionally ordered that "(1) during the time of [the defendant's] imprisonment, it was to be paid through the BOP Inmate Financial Responsibility Program (IFRP), and (2) during the period of supervised release it was to be paid in monthly installments of not less than ten percent of Gunning's gross income, commencing thirty days after his release from imprisonment." *Gunning II*, 401 F.3d at 1147 (summarizing district court's order). We again held that the district court impermissibly delegated its authority, this time to the BOP. *Id.* at 1150. In so holding, we explained that, "because restitution was due immediately, there was a period

between sentencing and supervised release — the period of Gunning's incarceration. *That had to be provided for*. At that point, the district court overlooked the spirit of our decision and delegated the non-delegable to the BOP for the incarceration period." *Id.* (emphasis supplied).

In *United States v. Lemoine*, 546 F.3d 1042 (9th Cir. 2008), we subsequently clarified the demarcation between impermissibly delegating authority to the BOP and the BOP's independent power to administer the IFRP. Lemoine's order of restitution required him to pay restitution during his imprisonment "at the rate of *not less* than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program." *Id.* at 1044 (emphasis supplied). Lemoine voluntarily enrolled in the IFRP, and the BOP required Lemoine to pay restitution at a rate of $132 per month, leading to Lemoine challenging the BOP's authority to require payment higher than the court's schedule. *Id.* Because the district court set a schedule of at least $25 per quarter, we upheld this restitution order. *Id.* at 1047-50. Rejecting Lemoine's arguments that he was "forced" to participate in the IFRP because he would be denied certain privileges if he had refused to join, we held "that, where the district court has properly set a restitution repayment schedule as required under the MVRA, the BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP." *Id.* at 1050.

**[4]** Since *Lemoine* forecloses Ward's argument that he is being "forced" to participate in the voluntary IFRP, the issue in this case thus turns on whether by ordering "immediate" payment of restitution, the district court failed in effect to set a restitution repayment schedule and instead delegated its statutory duty to the BOP. Dicta in both *Gunning II* and *Lemoine* suggest that "immediate" repayment does not satisfy the MVRA's requirement that the district court "shall . . . specify in the restitution order the manner in which, and the schedule

according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). *Lemoine* noted that "[t]he First, Second, Third, Sixth, Eighth, Tenth, and Eleventh Circuits have all held that a district court must set a restitution repayment schedule, and those that have reached the issue have concluded, as we did in *Gunning II*, that a court may not simply order immediate payment and leave to the BOP the task of setting the actual schedule." 546 F.3d at 1048 n.4 (citations omitted).[2] Indeed, the sentencing court in Ward's case agreed, before it later dismissed Ward's petition for lack of jurisdiction.

> The court is informed that, as in the present case, courts of this district have commonly imposed restitution "due immediately" as part of sentences where the defendant is committed to a term of imprisonment. The expectation has been that BOP and/or Probation will work out the details of payment. Pursuant to the foregoing discussion [of *Gunning I* and *II* and *Lemoine*], it is now apparent to the court that the usual form of imposition of restitution in this district constitutes an impermissible delegation of authority to either BOP or Probation.

*United States v. Ward*, 2008 WL 5220959, at *3.

The Government argues that *Gunning II* can be distinguished because the district court in that case ordered restitution to be paid according to the IFRP, impermissibly delegating the court's authority, whereas here the court did not explicitly order payment according to the IFRP. 401 F.3d at 1147. But given *Lemoine*, we cannot fairly limit *Gunning II*'s applicability to cases where the court explicitly orders participation in the IFRP. The order in *Lemoine* directed resti-

---

[2]In *Lemoine*, we also noted that, "[i]n contrast, the Fourth, Fifth, and Seventh Circuits have held that a judgment of conviction need not contain a schedule of restitution payments to be made during the period of incarceration." 546 F.3d at 1048 n.4 (citations omitted).

tution payment of at least $25/quarter, to be paid "pursuant to" the IFRP, which the district court held "did not mandate" Lemoine's participation in the IFRP. 546 F.3d at 1044. In upholding this order, we relied on the "proper" setting of a restitution payment schedule by the district court (at least $25/quarter) in holding that "the BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment." *Id.* at 1050. Unless the district court sets a "proper" schedule, the order is not valid, regardless of whether it explicitly mandates participation in the IFRP.

This leads to the question of what a "proper" restitution order entails. The district court in this case held that a restitution order requiring payment "due immediately" is a valid order in compliance with the MVRA. *Ward v. Chavez*, No. CV-09-00246-PHX-GMS, 2009 WL 2753024, at *6 (D. Ariz. Aug. 27, 2009).[3] Likewise, the Government argues that in *United States v. Martin*, we previously held that a restitution order requiring immediate payment is a valid order. *See United States v. Martin*, 278 F.3d 988, 1006 (9th Cir. 2002). *Martin*, however, is inapposite to this case, as we did not there address whether "immediate" payment of restitution delegated scheduling authority to the BOP or probation, but rather concluded that "[t]he court had before it information regarding

---

[3]Because the district court found that Ward's petition for a writ of habeas corpus did not assert that the sentencing court erred in ordering immediate repayment it spent only a page addressing this argument, relying on *United States v. Young*, 533 F. Supp. 2d 1086, 1088 (D. Nev. 2007). *Young*, however, pre-dates *Lemoine* and is contrary to it to the extent it relies on Seventh Circuit authority that *Lemoine* disclaimed. *See Lemoine*, 546 F.3d at 1048 n.4 (citing *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008)). The district court seems to have taken an unduly narrow view of Ward's habeas petition, which explicitly states he is arguing that "The Bureau of Prisons (BOP) does not have a lawful order to collect restitution from the Petitioner while he is incarcerated." By contrast, in this appeal, both parties agree that whether the sentencing court improperly delegated its scheduling authority to the BOP is one of the issues presented.

Defendant's financial resources that it presumably considered and found insufficient to warrant periodic payments." *Id.* at 1006. In so holding, we found that the information available to the sentencing court was sufficient to discharge the court's responsibilities under the MVRA, including the requirement that the sentencing court consider the defendant's financial position in determining a restitution payment schedule. *See id.*; 18 U.S.C. § 3664(f)(2).

By contrast, the majority of our sister circuits to have considered the issue have concluded that where the defendant lacks the financial resources to make immediate payment, a sentencing court may not order immediate payment because it implicitly delegates to the BOP or the probation office the district court's obligation to schedule payment. For example, in *United States v. Prouty*, the Eleventh Circuit concluded that, since setting the payment schedule is a "core judicial function," a restitution schedule ordering "immediate" payment "with an informal understanding that the probation office shall set a repayment schedule" impermissibly delegated the district court's duty. *United States v. Prouty*, 303 F.3d 1249, 1254-55 (11th Cir. 2002), *cited with approval in Lemoine*, 546 F.3d at 1048 n.4. The Third Circuit, endorsing *Prouty*, has also taken the position that the district court may not simply order immediate payment of restitution with the expectation that the BOP or Probation will set the details of payment. *See United States v. Corley*, 500 F.3d 210, 225-27 (3d Cir. 2007), *vacated and remanded on other grounds by* 556 U.S. 303 (2009), *cited with approval in Lemoine*, 546 F.3d at 1048 n.4. The Third Circuit noted that since the "District Court apparently understood that Corley could not make immediate payment in full, it was required under § 3664(f)(2) to set a different schedule of payments. . . . [O]rders directing 'immediate' payment under such circumstances are indistinguishable in principle from outright delegations of authority to the Bureau of Prisons." *Id.* at 226-27.

The Eighth Circuit also agrees. In *United States v. McGlothlin*, the district court ordered restitution payable "immediately," but refused to set a payment schedule at sentencing and instead said that he would "let the Bureau of Prisons tackle that problem." *United States v. McGlothlin*, 249 F.3d 783, 785 (8th Cir. 2001), *cited with approval in Lemoine*, 546 F.3d at 1048 n.4. The Court of Appeals reversed, holding that the district court could not leave to the BOP its statutory duty to set a payment schedule, and that the district court must set a "detailed payment schedule at sentencing." *Id.* Likewise, the Second Circuit in *United States v. Kinlock* rejected a restitution order that simply ordered payment "immediately," holding that "[w]hen restitution cannot be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation." *United States v. Kinlock*, 174 F.3d 297, 301 (2d Cir. 1999), *cited with approval in Lemoine*, 546 F.3d at 1048 n.4.[4] Additionally, the First, Sixth, and Tenth Circuits have endorsed this approach, albeit, like *Lemoine*, in dicta or in factual circumstances not entirely similar to the instant case. *See United States v. Merric*, 166 F.3d 406, 409 (1st Cir. 1999); *United States v. Davis*, 306 F.3d 398, 426 (6th Cir. 2002); *United States v. Overholt*, 307 F.3d 1231, 1256 (10th Cir. 2002), *all cited with approval in Lemoine*, 546 F.3d at 1048 n.4. *But see United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008) (concluding that court ordered payment schedules "need not, and as a rule should not, begin until after the defendant's release from prison," and that "[p]ayments until release should be handled through the [IFRP] rather than the court's auspices")*; United States v. Miller*, 406 F.3d 323 (5th Cir. 2005) (holding no error to order immediate payment where selling defendant's assets would cover majority of restitution,

---

[4]*Kinlock* addressed a restitution order issued before Congress enacted the MVRA. But, as the Court of Appeals noted, the factors a court must consider in issuing a restitution order under the previous version of the statute and after the MVRA "are the same in either case." *Kinlock*, 174 F.3d at 299 n.2.

followed by monthly schedule after release from prison); *United States v. Dawkins*, 202 F.3d 711, 716 (4th Cir. 2000) (upholding district court's decision to order restitution payment pursuant to IFRP while incarcerated).

**[5]** Where, as in *Martin*, the court determines that the defendant's financial resources are sufficient such that periodic payments are unwarranted, there is no other entity the court delegates its responsibility to in ordering that restitution should be paid immediately, and that restitution order is not unlawful. But where the defendant has insufficient financial resources to make immediate repayment, the district court — not BOP, not Probation — must set a repayment schedule in the judgment of conviction in order to discharge its responsibilities under the MVRA.

**[6]** Further, where the court has not even considered the defendant's financial position and simply orders "immediate" payment, "[t]he expectation has been that BOP and/or Probation will work out the details of payment." *United States v. Ward*, No. CR 02-5231 AWI, 2008 WL 5220959, at *3; *see also Prouty*, 303 F.3d at 1254-55 (holding immediate repayment implicitly delegates such authority). This is insufficient under the MVRA, which directs that the district court "shall . . . specify in the restitution order . . . the schedule according to which[ ] the restitution is to be paid, in consideration of" the defendant's financial circumstances. 18 U.S.C. § 3664(f)(2). Ordering "immediate" payment when the sentencing court does not know whether it is possible for the defendant to make immediate payment and instead leaving it to the BOP to "work out the details" does not "specify" the schedule of payment "in consideration of" the defendant's financial circumstances. It is true, as the dissent notes, that under 18 U.S.C. § 3572 the default payment option for restitution is immediate repayment, unless the court orders periodic payment in "the interest of justice." Dissent at 4901-02; *see Martin*, 278 F.3d at 1006 (describing it as the "general rule"). But section 3572 is modified here by section 3664, which

applies specifically to a mandatory restitution order imposed under the MVRA, and which mandates that the district court specify the payment schedule in the restitution order "*in consideration of*" the defendant's financial circumstances. 18 U.S.C. § 3664 (emphasis supplied). It is here that the sentencing court's order failed — as the sentencing court itself subsequently acknowledged — by simply setting "immediate" payment and leaving it to the BOP to "work out the details." *United States v. Ward*, 2008 WL 5220959, at *3.

**[7]** For a restitution order to be lawful, therefore, § 3664 requires that the district court set a schedule in consideration of the defendant's financial resources. If the court considers the defendant's financial resources and concludes that periodic payments are unwarranted "in the interest of justice," the order is lawful, as we concluded in *Martin*. If, however, the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule "in consideration of" the financial circumstances of the defendant. The dissent argues that the record does not demonstrate that the sentencing court failed to consider Ward's financial circumstances in ordering that restitution of approximately $29,000 be paid immediately. Dissent at 4902-03. We disagree. Here, the sentencing court acknowledged that, in Ward's case (and in others before that court), it had ordered immediate payment of restitution, with the expectation that the BOP would "work out the details of payment." *United States v. Ward*, 2008 WL 5220959, at *3. The court concluded that pursuant to the *Gunning* cases and *Lemoine* its "usual practice" constituted an impermissible delegation to the BOP. *Id.* The court then ordered the BOP to cease collecting restitution payments, *id.* at *4, before later vacating that order for lack of jurisdiction. *United States v. Ward*, 2009 WL 160690. We think it is clear that the district court acknowledged it had set the order of "immediate payment" without regard to the defendant's financial circumstances, and

left it to the BOP to take those circumstances into account in "work[ing] out the details." It appears to us unreasonable to read the sentencing court's opinion, and yet conclude, as the dissent does, that whether the sentencing court considered the defendant's financial circumstances is not in the record, and further "assume" that the district court set the schedule of paying $29,000 immediately "in consideration of" Ward's financial circumstances. Dissent at 4899-4900, 4902-03; *see also Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (taking judicial notice of state court documents that were "directly related" to the habeas petition presented (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))).[5]

The dissent also argues that this is not a "delegation" of the sentencing court's responsibility to set a schedule, since the Government does not have judicial imprimatur to set a *schedule* that the district court is required to enforce, but must instead move for *sanctions* when the defendant defaults by failing to make immediate payment of the entire restitution amount. Dissent at 4903-04, 4910-12; *see also Sawyer*, 546 F.3d at 794-96. But that a schedule set by the BOP is not legally binding under the MVRA does not address the *district court's* failure to fulfill its MVRA obligations by leaving it to the BOP to "work out the details." The BOP may move for sanctions, or it may instead choose to set an informal sched-

---

[5]The dissent also argues that the issue of what the sentencing court considered is not properly before us, and has been waived by the petitioner. Dissent at 4895-99. We disagree. The petition argues that the BOP does not have a lawful restitution order that gives it the authority to collect restitution from the petitioner. Whether the restitution order is lawful depends on whether or not the sentencing court that issued the order complied with the MVRA. The dissent's approach of considering whether the restitution order complied with only some of the MVRA's requirements, such as specifying the manner of payment, *see* Dissent at 4902, but not others, such as whether the sentencing court set a payment schedule in consideration of the defendant's financial position, seems to us inconsistent. 18 U.S.C. § 3664(f)(2).

ule, holding the threat of sanctions over the defendant. That power to enforce gives the BOP the power to dictate the terms of the defendant's payment of the restitution order. It is expressly contrary to the MVRA's direction that the district court "shall," in the judgment of conviction, set the payment schedule "in consideration of" the defendant's financial circumstances to simply order immediate payment. *See also Corley*, 500 F.3d at 226 (comparing MVRA with its predecessor, the Victim and Witness Protection Act of 1982, and noting that, unlike the VWPA, the MVRA requires the district court to specify the payment schedule in the judgment). As our sister circuits have explained, this implicit delegation of authority is "indistinguishable" from an explicit order directing the BOP to set the schedule. *Id.* at 226-27 (citing *Prouty*, 303 F.3d at 1255).

**[8]** Accordingly, because the sentencing court in Ward's case did not set forth a proper payment schedule in the restitution order, that order is unlawful, and the BOP therefore lacks the authority to collect restitution payments from Ward through the IFRP. *See, e.g.*, *Ybarra v. Smith*, No. CV-09-1447-PHX-DGC (JRI), 2010 U.S. Dist. LEXIS 135695, at *5-6 (D. Ariz. Dec. 20, 2010) ("Without a proper order, the BOP does not have the authority to require a schedule of restitution payments collected while Petitioner is participating in the IFRP." (internal quotation marks and citation omitted)).[6]

---

[6]The dissent argues that because petitioner failed to directly appeal his sentence and challenge the legality of the restitution order on that appeal, he has waived his right to make his argument — that the BOP lacks the ability to collect restitution payments because the restitution order is unlawful — through a section 2241 petition. Dissent at 4896-97. The Government, however, never raised this objection at either the district court or appellate court level, and any such procedural objection has been waived. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (holding procedural default is a defense that state is obligated to raise, is waived by failure to assert, and is not jurisdictional requirement that must be considered *sua sponte*); *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990) (holding the Government waived procedural default defense that it failed to raise, despite the Government's asserting failure to exhaust argument).

## CONCLUSION

In sum, we find that a sentencing court must consider the defendant's financial resources in setting a restitution payment schedule, and, if the defendant is unable to pay restitution immediately, the court cannot simply order "immediate" repayment and leave the details of the actual payment schedule to the BOP or Probation. Applying that standard to this case, we find that the restitution order against petitioner Ward impermissibly delegates to the BOP the court's obligation to set a payment schedule, and therefore, that the BOP lacks the authority to collect restitution payments from the petitioner. Accordingly, we reverse the district court's ruling and remand to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

WALLACE, Senior Circuit Judge, dissenting:

The majority holds that a district court impermissibly delegates its authority to set a payment schedule under the Mandatory Victims Restitution Act (MVRA) if it orders immediate payment without considering the defendant's financial condition. In so holding, the majority has volunteered to address an issue which is not before us. Ward waived that issue by failing to raise it in a direct appeal from his sentence. Furthermore, he did not argue either to the district court or to us that the sentencing court failed to consider his financial condition.

Despite Ward's double waiver, and without an evidentiary record, the majority finds, as a matter of fact, that the judge who sentenced Ward in the Eastern District of California failed to consider the factors relevant to Ward's ability to pay restitution. I disagree with the majority's factual finding, which is improper on review of a denial of a petition for

habeas corpus filed in the District of Arizona. Furthermore, even assuming that the sentencing court did fail to consider those factors, I disagree with the majority's erroneous legal conclusion that such an error somehow delegated the sentencing court's authority to the Bureau of Prisons (BOP).

For all of these reasons, I cannot join the majority opinion. There is nothing in the restitution order that delegates to the BOP the sentencing court's authority to set a payment schedule. Therefore, I would affirm the Arizona district court. I dissent.

## I.

Ward did not argue to the court from which this appeal comes to us (the District Court for the District of Arizona) or to us that the judge who sentenced him in the Eastern District of California entered the restitution order without first considering his financial condition. Even if he had, we would have required him to demonstrate why we should consider such a claim when it was not raised on direct appeal from the California district court. In *Stone v. Powell*, the Supreme Court explained:

> The writ of habeas corpus and its federal counterpart, 28 U.S.C. § 2255, will not be allowed to do service for an appeal. For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. Even those nonconstitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice.

428 U.S. 465, 477 n.10 (1976) (internal citations and punctuation omitted).

A claim that the California sentencing court failed to consider statutory factors would certainly have been available to Ward during his direct review process. If a mistake had been made, such misapplication of the statute could have been made due to error that did not constitute a constitutional violation. Therefore, if Ward had claimed in his petition for habeas corpus that the California sentencing judge failed to consider the statutory factors, the Arizona district court would likely have denied the claim as waived, and we likely would have affirmed that decision.

Ward, however, did not make that claim. The Arizona court did not have to reject it, and we do not have to affirm the rejection. Instead, we can treat that claim the same way Ward has treated it: as if it does not exist. The majority, however, digs that claim up sua sponte, despite its obvious waiver.

II.

Not only does the majority decide an issue that Ward waived by not raising it on direct appeal from the California court, it decides that issue after Ward again waived it on this appeal. We normally do not consider issues that were not presented to the trial court. *See, e.g.*, *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) ("It is a long-standing rule in the Ninth Circuit that, generally, 'we will not consider arguments that are raised for the first time on appeal.' " (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999))). That rule is compounded by our ordinary practice of refusing to consider issues that are not raised in the opening brief. *See, e.g.*, *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) ("We will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (internal quotation marks omitted)). While those rules are subject to certain exceptions, I am not aware of any court that considers issues that were not even raised in the reply brief or (at the last opportunity) at oral argument.

In fact, the first question put to Ward's counsel at oral argument (by Judge Rakoff) was: "On the factual question, was, and I'm not sure this relates to exhaustion, but was there any finding or any indication that he couldn't pay this money immediately if he had actually been forced to do that?" Counsel responded: "Well Judge, what you're asking about is an issue that relates to the trial court, the original trial court's, findings. I did not have that record available to me and I do not know the answer to that question." Counsel went on to speculate,

> It appears to me from the sentencing order that the trial judge did not consider that question, because, of course, he's required to take into account a number of those factors, including that one, and there's no reference in the sentencing order or anything else in the record for this case that I've seen that would indicate that the trial judge did that. You know, based on some other things we know about Mr. Ward, I think it's unlikely that he was going to pay a restitution award in the amount of—

Judge Rakoff interjected, "I think everyone would agree that it's unlikely but I just wondered if there was anything in the record on that." Counsel responded, "Not to my knowledge, your honor."

Thus, Ward did not just fail to raise an argument that the California sentencing court did not consider the statutory factors; his attorney expressly declined to make that argument. While counsel was willing to speculate on how those factors might have weighed, he conceded that the record upon which Ward's appeal from the Arizona court was based did not include that information.

Nevertheless, in spite of the lack of an evidentiary record, the majority finds, as a matter of fact, that "it is clear that the district court acknowledged it had set the order of 'immediate

payment' without regard to the defendant's financial circumstances." Op. at 4892. The majority makes this finding by taking judicial notice of statements by the California sentencing judge in an order (vacated on reconsideration for lack of jurisdiction) granting a motion to set aside the judgment. Op. at 4892-93. Ward did not request judicial notice of the California sentencing court's vacated order. But even if judicial notice were proper, I do not believe the judge's statements in that order conclusive. The sentencing judge stated that courts in the Eastern District of California had commonly imposed restitution due immediately with the expectation that BOP and/or Probation would work out the details of payment. *United States v. Ward*, No. CR 02-5231 AWI, 2008 WL 5220959, at *3 (E.D. Cal. Dec. 12, 2008). But the judge did not declare that, in Ward's case, he received no presentence report with information relating to his financial condition or that he ignored such information. As Ward's counsel conceded at oral argument, that information is not part of the record on the appeal before us.

We are a court of review. We often review findings of fact made by lower courts, but it is not our job to find the facts ourselves. The majority's decision to plow ahead with this waived issue, in the face of a concededly insufficient record, is as unwise as it is unprecedented. Because the question of whether the sentencing court in California considered factors relevant to Ward's financial condition is not before us, I would assume that the sentencing judge was provided with information regarding those factors and considered it. *Cf. United States v. Martin*, 278 F.3d 988, 1006 (9th Cir. 2002) (district court did not err in ordering immediate payment of 4.5 million dollars in restitution when the court "had before it information regarding Defendant's financial resources that it presumably considered and found insufficient to warrant periodic payments"). Employing that assumption, I would

decide the question that Ward actually raised, and not attempt to circumvent our normal appellate process.[1]

### III.

The question Ward actually raised and the one we must consider is whether the California sentencing court improperly delegated to the BOP its authority to impose a payment schedule. I do not dispute that an attempt to delegate a district court's responsibilities under the MVRA is improper. The question is whether the California district court's order actually did so. The answer to that question is simple. It did not.

The MVRA requires sentencing courts to order defendants convicted of certain crimes to pay restitution to victims. 18 U.S.C. § 3663A. It provides:

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
>> (A) the financial resources and other

---

[1] The majority accuses me of considering only some of the MVRA's requirements but not others. Op. at 4893 n.5. But that is not my position. I am not ignoring the requirements of the MVRA. I am simply assuming that those requirements which Ward never challenged were satisfied. As Ward concedes, the record on this habeas corpus petition is silent as to whether the sentencing court failed to satisfy those requirements. The majority also attributes to me the position that Ward waived his right to argue in a section 2241 petition "that the BOP lacks the ability to collect restitution payments because the restitution order is unlawful." Op. at 4894 n.6. But again, that is not my argument. My position is that Ward waived his right to argue that the sentencing court failed to consider his financial condition. The majority's assertion that it is the government that waived any objection to arguments that are nowhere to be found in the record is ironic, to say the least.

assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2). Section 3572, in turn, provides:

(1) A person sentenced to pay . . . restitution . . . shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.

(2) If [the restitution order] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made.

18 U.S.C. § 3572(d). Finally, 18 U.S.C. § 3664(f)(3) provides:

(A) A restitution order *may* direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.

(B) A restitution order *may* direct the defendant to make nominal periodic payments if the court finds

from facts on the record that the economic circum-
stances of the defendant do not allow the payment of
any amount of a restitution order, and do not allow
for the payment of the full amount of a restitution
order in the foreseeable future under any reasonable
schedule of payments.

(emphasis added). Thus, the MVRA requires the district court
to consider factors relevant to the defendant's ability to pay
and to state in its order how and when restitution should be
paid. Section 3664(f)(2). But the decision of how (in cash or
in kind) and when (immediately, on a date certain, or at speci-
fied intervals) the restitution should be paid is committed to
the district court's discretion. Section 3664(f)(3). The pre-
sumptive method for payment is in cash and the presumptive
schedule for payment is immediate. Section 3664(f)(2) (incor-
porating § 3572(d)). The statute does not require the court to
explain in the order its reasons for adopting a particular man-
ner of, or schedule for, payment. In addition, since the default
rule is to order immediate payment, the defendant bears the
burden of demonstrating that the interests of justice would be
served by establishing an installment schedule or by delaying
payment in full until a date certain. *Id.*

On its face, the restitution order satisfies the MVRA. By
ordering Ward to pay the restitution immediately, the sentenc-
ing court "specif[ied] in the restitution order the manner in
which, and the schedule according to which" Ward's restitu-
tion was to be paid. *See* 18 U.S.C. § 3664(f)(2). In other
words, the court ordered Ward to pay restitution in a particu-
lar manner (i.e., in cash), and according to a particular sched-
ule (i.e., immediately). Because the statute does not require
the court to specify in the order its reasons for ordering a par-
ticular manner of payment or a particular payment schedule,
we cannot tell from the order whether the California sentenc-
ing court satisfied its responsibility to consider factors relating
to Ward's financial condition. Since Ward does not argue that
he urged the sentencing court to impose an installment sched-

ule in the interests of justice or that the sentencing court failed to consider the factors relating to his financial condition, we can properly assume that the sentencing court did consider those factors. The result, based on the record before us, is that the order complies with the statutory requirements. This, of course, assumes that the Arizona district court can even reach the California district court issue based on collateral habeas corpus jurisdiction.

Furthermore, and regardless of whether the court considered all the factors it was bound to consider, the restitution order does not delegate the judicial authority to impose a payment schedule to the BOP or to anyone else. Webster's Dictionary defines the verb form of the word "delegate" as "to entrust to another: TRANSFER, ASSIGN, COMMIT <power *delegated* by the people to the legislature> <one may [delegate] one's authority to a competent assistant>." Webster's Third New International Dictionary of the English Language Unabridged (1986). Similarly, Black's Law Dictionary states, "[a]s a verb, ["delegate"] means to transfer authority from one person to another; to empower one to perform a task in behalf of another, *e.g.*, a landlord may delegate his agent to collect rents." Black's Law Dictionary 426 (6th ed. 1990). Thus, a court delegates its authority if it gives another body authority to perform some task that is committed to the court. Under our precedents, a sentencing court impermissibly delegates its authority to impose a restitution payment schedule if it requires a defendant to submit to a payment schedule imposed by another body. *See United States v. Gunning (Gunning I)*, 339 F.3d 948, 950 (9th Cir. 2003) (construing order that defendant pay restitution "as directed by a U.S. probation officer" as assigning to the probation office full control of subsequent payment); *United States v. Gunning (Gunning II)*, 401 F.3d 1145, 1150 (9th Cir. 2005) (construing order that defendant pay restitution while imprisoned through the BOP's Inmate Financial Responsibility Program as a delegation of scheduling authority).

Ward's restitution order does not require him to pay any remaining balance "as directed by the BOP" or "pursuant to the IFRP." It merely orders Ward to pay the full restitution amount immediately. The order simply does not provide for the possibility that Ward might not pay the full restitution amount as ordered. There is nothing in the order that purports to require Ward to submit to a payment schedule imposed by a body other than the court.

When Ward failed to pay the full restitution amount immediately as ordered by the court, he defaulted on his obligation. Thereafter, in exchange for certain privileges, he voluntarily agreed to make payments toward his defaulted obligation according to a schedule offered by the BOP, pursuant to the BOP's Inmate Financial Responsibility Program (IFRP). The sentencing court may have assumed that, should Ward fail to pay the full amount, he would choose to participate in the IFRP. But it did not order him to do so. Nor did the California sentencing court purport to give the BOP authority to require Ward to participate. Nothing in the court's order can be construed as a delegation of any authority to the BOP. Nor does the order forbid Ward from participating in the IFRP if he *voluntarily* decides to do so. That is *his* choice, not the district court's or the BOP's.

The majority concludes that the sentencing court delegated its authority by grossly expanding our *Gunning* cases. Those cases, however, are clearly distinguishable. The majority also cites similarly distinguishable out-of-circuit cases. Only one case directly supports the majority's decision: an out-of-circuit case that failed to appreciate the real purpose of the MVRA's scheduling provisions.

In *Gunning I*, we held that the district court cannot delegate its statutory obligation to specify the manner in which, and the schedule according to which, a restitution order is to be paid. 339 F.3d at 949. In that case, there was no question that the district court had delegated its authority. The district court

had ordered "that Gunning 'immediately' make restitution in the amount of $3,924,835.37 and, simultaneously, that '[a]ny unpaid amount is to be paid during the period of supervision *as directed by a U.S. probation officer*.' " 339 F.3d at 950 (emphasis added). That order could only have been construed as assigning "to the probation office full control of subsequent payment." *Id.*

We reaffirmed this principle in *Gunning II*. On remand from *Gunning I*, the district court had again ordered restitution payable immediately,

> but with the unpaid amount to be paid as follows: (1) during the time of his imprisonment, it was to be paid through the BOP Inmate Financial Responsibility Program (IFRP), and (2) during the period of supervised release it was to be paid in monthly installments of not less than ten percent of Gunning's gross income, commencing thirty days after his release from imprisonment.

*Gunning II*, 401 F.3d at 1147. We held that the new order again delegated the district court's authority because it improperly directed the BOP to determine the payment schedule for the time of Gunning's imprisonment. *Id.* at 1150. Thus, in both *Gunning I* and *Gunning II*, we held that the district court delegated its scheduling authority when it affirmatively directed another entity to set the schedule for the payment of restitution.

The facts of this case are clearly distinguishable from the *Gunning* cases. Here, the California district court did not order Ward to participate in the IFRP. It did not direct the BOP to establish a payment schedule. The order did not assign "full control of subsequent payment" to anyone. The *Gunning* cases simply are not authority for the issue before us.

We further developed the non-delegation principle in *United States v. Lemoine*, 546 F.3d 1042 (9th Cir. 2008). In that case, the district court had ordered Lemoine to pay restitution "during his imprisonment 'at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.' " *Id.* at 1044. As a condition of his participation in the IFRP, however, the BOP required Lemoine to pay restitution at a rate of $132 per month. *Id.* In denying Lemoine's motion to modify the judgment, the district court said that it had assumed that Lemoine would choose to participate in the IFRP when it entered the restitution order. *Id.* Notwithstanding the higher rate imposed by the BOP, and notwithstanding the district court's assumption that Lemoine would participate in the IFRP, we held that the restitution order did not delegate the district court's scheduling authority because "nothing in the text of the statute or our prior decisions places any limits on the BOP's operation of an independent program, such as the IFRP, that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective judgments." *Id.* at 1048. If Lemoine had chosen not to participate in the IFRP, he could have made payments according to the court-ordered schedule. Thus, *Lemoine* did not hold that an order of immediate payment implicitly delegates scheduling authority to the BOP. Rather, it held that a district court's assumption that a defendant would choose to participate in the IFRP does not mean that its restitution order impermissibly delegated scheduling authority. *Id.* at 1044.

Clearly, *Lemoine* does not support reversal in Ward's case. On the contrary, its analysis is consistent with affirming the district court. *Lemoine* makes clear that the BOP can operate the IFRP regardless of the schedule imposed by the court. Even if the California sentencing court had ordered Ward to pay according to an installment schedule, the BOP could still have demanded different terms for the voluntary privilege of participation in the IFRP. We should look no further in deciding this appeal than this circuit. *Lemoine* controls through its

analysis of the facts presented, not through its footnoted dictum relied on by the majority.

But in the absence of binding precedent to support its reasoning, the majority bases its decision almost entirely on cases from our sister circuits. Most of these cases simply apply the same rule that we adopted in the *Gunning* cases to similar facts. Others conclude (on direct review, not collateral review) that sentencing courts abused their discretion at sentencing, without any application of the non-delegation doctrine.

For instance, the facts of *United States v. Corley*, 500 F.3d 210 (3d Cir. 2007), *vacated on different grounds*, 556 U.S. 303 (2009), are indistinguishable from the facts of *Gunning II*. In *Corley*, the sentencing court ordered:

> The defendant shall make restitution and fine payments from any wages he may earn in prison *in accordance with the Bureau of Prisons Inmate Financial Responsibility Program.* The restitution and fine shall be due immediately. Any balance remaining upon release from custody shall be paid at a rate of no less than $100.00 per month.

500 F.3d at 224 (emphasis added). As in *Gunning II*, the Third Circuit ordered the defendant to submit to the scheduling authority of the BOP during the period of incarceration by requiring him to participate in the IFRP. Here, on the other hand, the court did not order Ward to submit to the authority of the BOP. He may voluntarily choose to participate in the IFRP or he may choose not to.

The Second Circuit's decision in *United States v. Kinlock*, 174 F.3d 297 (2d Cir. 1999), vacated a restitution order on the ground that the sentencing court abused its discretion in ordering immediate payment. In that case, the sentencing court considered the statutory factors, but ordered immediate

payment in the face of clear evidence that the defendant was incapable of making payment immediately. *Id.* at 301. Contrary to the majority's characterization of *Kinlock*, the Second Circuit did not hold that the restitution order contained an impermissible delegation of authority. It merely held that the sentencing court's abuse of discretion required the restitution order to be vacated and remanded.

*Kinlock* would be persuasive if the case before us were a direct appeal and Ward's argument was that the district court ordered immediate payment when the interests of justice required a different schedule. But that is not the question before us. By citing *Kinlock*, the majority conflates the idea that failure to consider statutory factors constitutes reversible error with the idea that delegation of authority renders an order invalid *ab initio*. The majority also fails to differentiate between a direct appeal from a sentence, where review for error of the former kind would be proper, and a collateral attack, where it is not. *Kinlock* is inapposite.

As the majority acknowledges, the First, Sixth, and Tenth Circuits have not addressed the precise issue with which we are now faced. In *United States v. Merric*, the First Circuit recognized, as I recognize, "that the district judge could not empower the probation officer to make a final decision as to the installment schedule for payments." 166 F.3d 406, 409 (1st Cir. 1999). But, whereas Ward's restitution order has no language regarding submission to a payment schedule set by the BOP or participation in the IFRP, the order in *Merric* directed that, "[a]ny amount that the defendant is unable to pay now shall be paid in monthly installments, *to be determined in amount by the supervising officer*, during the period of his supervised release." *Id.* at 408 (emphasis added). Similarly, neither *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002), nor *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002), held that a failure to consider the statutory factors automatically constitutes a delegation of scheduling authority.

The primary case that gives comfort to the majority's conclusion is the Eleventh Circuit's decision in *United States v. Prouty*, 303 F.3d 1249 (11th Cir. 2002). In *Prouty*, the defendant objected to an order that he pay restitution immediately on the ground that he did not have the means to pay. *Id.* at 1251. Prouty asked the court to set a reasonable payment schedule, but the court denied the request, "stating: 'I will leave that to the discretion of the Probation Office or whoever does that.' " *Id.* The district court's order did not require Prouty to submit to a schedule imposed by the Probation Office, but a Probation Officer told the court that "they do work out payment plans with the defendants." *Id.* at 1254. On appeal, Prouty argued "that the district court erred in failing to consider his financial condition." *Id.* at 1253. In the alternative, Prouty argued "that the district court improperly delegated the setting of the payment schedule to the Probation Office." *Id.* The Eleventh Circuit adopted Prouty's alternative argument: "[I]f the statute does not permit delegation to the probation office, we cannot endorse a restitution order requiring 'immediate' payment with an informal understanding that the probation office shall set a repayment schedule." *Id.* at 1255. It reasoned that "the availability of such an option would in practice defeat the statutory requirement that the court establish any installment schedule." *Id.* The Eighth Circuit reached a similar result in *United States v. McGlothlin*, 249 F.3d 783 (8th Cir. 2001), but only after it also determined that the sentencing court abused its discretion when it ordered immediate payment without any consideration of the section 3664(f)(2) factors, an argument Ward declined to make.

*Prouty* and *McGlothlin* can, at best, only be persuasive authority and not controlling as they are not from our court. However, they are not persuasive. The problem with *Prouty* and *McGlothlin* is that they assume the probation office or BOP has inherent authority to set a repayment schedule unilaterally when a defendant fails to meet the payment schedule imposed by the court. That assumption is not correct. Once the court specifies the method and schedule for payment, if

and when payments are actually made is simply a collections matter. It would not be a great surprise to learn that even a defendant who has the ability to pay his obligations may, on occasion, fail to do so. In any collections scenario, the party seeking to collect a debt from a person who has failed to pay has the option to attempt to work out an arrangement for voluntary payment or to seek assistance from a court. But the collection agent does not have inherent authority to impose unilaterally and enforce a mandatory payment schedule. Indeed, the probation officer's statement in *Prouty* that the probation office would "work out [a] payment plan[ ]" indicates that he recognized such a plan would require Prouty's voluntary agreement. *See id.* at 1254.

The responsibility for collecting restitution obligations is committed to the Attorney General. 18 U.S.C. § 3612(c). But the statutes do not give the Attorney General judicial authority. Rather, if a defendant refuses to pay voluntarily—either because he lacks the ability to pay or because of mere contempt of the court—the statutes direct the Attorney General to seek assistance from the court.

A restitution payment goes into default if it is delinquent for more than 90 days. 18 U.S.C. § 3572(i). "Notwithstanding any installment schedule, when a . . . payment of restitution is in default, the entire amount of the . . . restitution is due within 30 days after notification of the default, subject to the provisions of section 3613A." *Id.* If the Attorney General or his designee moves the court for sanctions against a defendant in default pursuant to sections 3572(i) and 3613A, the court may take any number of measures, including entering or adjusting a payment schedule. 18 U.S.C. § 3613A(a)(1). But I am aware of no statute that requires the Attorney General to file such a motion. Rather, as a collections agent, the Attorney General has the discretion to decide whether to attempt to work out a voluntary arrangement for collecting the obligation or to seek help from the court.

Interestingly, even if the court had imposed an installment plan rather than ordering immediate payment, Ward's obligation would have become due immediately if he had defaulted on his payments. Thus, even if the district court had done what the majority says it should have, Ward could well have ended up in the precise situation he is in now. Under section 3572(i), a defendant may be obligated to pay the full amount of a restitution order immediately, *regardless of whether he is able to pay*.

In some circumstances, a defaulting defendant might himself request a hearing under sections 3572(i) and 3613A. For example, if Ward does not want to remain in default but lacks the ability to pay, he might seek the court's protection by requesting entry or adjustment of a payment schedule under section 3613A. Ward did attempt to obtain relief from the district judge that sentenced him by filing a motion under 28 U.S.C. § 2255. *See United States v. Ward*, No. CR 02-5231 AWI, 2008 WL 5220959, at *1 (E.D. Cal. Dec. 12, 2008), *vacated on reconsideration*, 2009 WL 160690 (E.D. Cal. Jan. 22, 2009). The sentencing court ultimately decided that it lacked jurisdiction to consider a motion under 28 U.S.C. § 2255. *Ward*, 2009 WL 190690, at *1-2. But that court would clearly have had jurisdiction to consider a motion to modify the restitution order under 18 U.S.C. §§ 3572(i) and 3613A.

A defendant like Ward might find the option to make such a motion attractive because it could help him avoid statutory penalties for his delinquency in payment. *See* 18 U.S.C. § 3612(g). But, again, because the onus of collection is on the Attorney General, nothing requires Ward to go before the court. He may choose to work out an informal voluntary arrangement with the BOP, or he may choose to live with the restitution order and remain in default.

Because Ward failed to pay the entire restitution award immediately, he went into default. Either Ward or the BOP

could have filed a motion in the district court pursuant to sections 3572(i) and 3613A, but neither party chose to do so. Instead, the BOP offered to allow Ward to participate in the IFRP and Ward voluntarily accepted the offer. It was *his* choice, not the order of the sentencing court. Ward does not have to participate in this program. He may opt out of it at any time. If he withdraws from the IFRP, the BOP cannot impose a payment schedule on him. As a defendant in default, Ward would be free to make payments on whatever schedule he chooses (or to make no payments at all) unless the government obtains sanctions from the California district court by filing a motion under sections 3572(i) and 3613A. Conversely, if Ward actually wanted to get out of default, he could file a motion pursuant to sections 3572(i) and 3613A requesting that the California district court enter a payment schedule. But even if the district court adopted a payment schedule, that would not prevent the BOP from setting its own conditions for Ward's voluntary participation in the IFRP. *See Lemoine*, 546 F.3d at 1050 ("[T]he BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP").

The majority argues that, because the BOP has the authority to move for sanctions, it has the power "to dictate the terms of the payment of the defendant's restitution order." Op. at 4894. Of course, this is not so. As I have explained, defendants are not bound by the will of the BOP. To be sure, the BOP has significant leverage in bargaining the terms of a defendant's participation in the IFRP. But the BOP cannot force a defendant to adopt the BOP's payment schedule. Furthermore, defendants in default such as Ward have access to the courts. If Ward were to file a motion under sections 3572(i) and 3613A, the government could recommend a schedule. But even if the court were to reject the government's recommendation, the BOP would remain free to set conditions for voluntary participation in the IFRP indepen-

dently of the court's order. But none of this confers upon the BOP the judicial authority to set Ward's payment schedule. On the facts of this case, the California sentencing court retained that authority.

## IV.

Where does this leave the appeal? The majority has chosen to address an issue which is clearly not before us. Having caught the scent of a possible abuse of discretion at sentencing, the majority adopts an argument that Ward failed to make on a direct appeal from the California district court, which he would likely have been precluded from making in his collateral attack in the Arizona district court, and which, in any event, he expressly declined to make either in his petition for habeas corpus or in his appeal from the Arizona district court's denial of the petition. That practice is surprising and well beyond the usual rules of issues taken in this court.

Even after ignoring Ward's repeated waivers, and even assuming the California district court issue can be reached in an Arizona district court habeas corpus petition, the majority is wrong on the law. Even assuming that the California sentencing court committed reversible non-constitutional error— either by failing to consider factors relating to Ward's financial condition or by ordering immediate payment in the face of clear evidence that Ward lacked the ability to pay—there is nothing in the order that delegates any of the court's authority to the BOP. I would hold that, as long as a district court does not order a defendant to submit to a schedule established by another body, an order that the defendant pay the restitution immediately does not run afoul of the non-delegation principle established in our *Gunning* cases.

Unless and until the government obtains a court order modifying the schedule for his payments, Ward is free to make payments on whatever schedule he prefers as an obligor in default. However, if he chooses to stop making payments

under his voluntary agreement with the BOP, then the BOP may withhold the privilege of participation in the IFRP. I would affirm the district court's denial of Ward's habeas corpus petition.